case which is Direct Niche v. Via Varejo. Good morning, my name is Darren Spielman. I represent Direct Niche and with me today at counsel's table is my partner Robert Kane. Your Honors, Via Varejo did not use the term Casas Bahia as a mark in the U.S. for advertising services and there was no substantial effects of any claimed use with any U.S. end users. The lower court erred in finding that Via Bahia had unlawed rights for advertising services because they were not sufficiently separate from the subject and they were merely incidental to the sale of those goods. The court also erred in relying on testimony from an inadmissible document compilation. The district court committed legal error and as a result this court should issue a reversal. To the extent it found facts after a trial you'll have to establish not only that it was error but that it was clearly erroneous. To the extent he made a mistake of law of course that's a different thing. Sure and as the court in as the court made clear the the error here or as we make clear in our brief the error was that any testimony relied upon from a purely inadmissible document can't be used to ultimately make the findings that were here. There's a there's a review of the the legal error here not just the issue of whether or not there was a finding of fact. The the the court went out of its way to try to deal with that issue and raised it raised what was called to the extent the witness had personal and independent knowledge of what was contained in a written document the fact that the document was struck as hearsay would not yield the conclusion that the independent testimony based on personal recollection would be struck as well. So you have to establish that the witness was not able to testify from personal independent recollection about the matter. It's not enough to simply say the document didn't come in as hearsay. Agreed and and in this case that the scenario you just laid out was present that the witness did not have independent recollection. Instead Mr. Bowler when questioning the witness was explicitly asked by the court do you want to admit this and his answer was no I'd like to identify specific numbers. There was no indication in the record that there was an a belief or an understanding that oh as a result this was my independent recollection of sales numbers or traffic web traffic numbers or anything. Instead it was directly. Didn't he actually testify that quote outside the spreadsheet that he was familiar because it was part of his job as marketing director that he was familiar with the existence of the US traffic to the Casas Bahia website and testify that it was over four million. He didn't give the precise number in that but didn't he testify that he had personal knowledge outside the spreadsheet? Yes based upon looking at the spreadsheet. So while the witness was certainly someone who could potentially have that information available in this situation the court explicitly relied on those numbers themselves and the court relied upon the testimony that was elicited from that. You had a question Judge Marcus? No no. Okay so so when when faced with putting that in its own little side pocket the larger concern is even assuming that there was potentially some admissible evidence or testimony about some use it comes back to the heart of is there use. Is there use of a trademark from a foreign website from a foreign entity in the US a common-law trademark in the US when you're talking about advertising services. So this is not simply the sale of a prior use of a mark sufficient to establish ownership. So so the first level is looking at at whether or not there's an advertising service. So under even looking at how as you argue in your brief that we should follow the test that's set forth by the Federal Circuit in the NRA advertising case. Why shouldn't we use the tests our own tests our 11th Circuit test that's established in Crystal Entertainment and Filmworks versus Gerardo. There are two separate tests. Why are we using another circuits test? Why don't we use our own test? Because when you're looking at the advertising services concept it's a very narrow specific issue and then combine that with the substantial effects test because you're dealing with a foreign entity trying to claim US rights. We can't use our own test to reach that determination to think that the the the NRA advertising is more instructive and and more on point with dealing with an a common-law advertising services claim. Because in this situation there is there's a claim that there was use by merely having three different types of use they claim they're relying on three different types of use. One was the preferred product placement another is the banner displays and lastly the marketplace sellers. You think the Federal Circuit test is a little more friendly than the 11th Circuit test? I think that the the Federal Circuit in NRA advertising is is more appropriate for this type of fact scenario. The the question before the court was was always about use it was never about anything other than there was no use and without use the the foreign entity can't try to reclaim or claim any rights from the US ownership of this domain. It's about whether or not that foreign entity can step in and declare and and prove use and substantial effects of such use. There was testimony that some individual companies purchased advertising services from via Varejo right? They use the Google but but they also had some in testimony that some individual companies purchased their advertising services right? That that assumes that you're deciding that there was an actual advertising service purchase which we don't believe is the case. Okay well let me rephrase my question. There is testimony that companies paid via Varejo to run their banner ad on their platform right? To put a preferred product placement again. I'm not talking no the I know the preferred product placement but the the banner ads came in two forms. There was the Google banner ads but there were also individual companies that they specifically contracted with individually right? So there are three scenarios and definitions might really help us here in the instructive and even if the court is so inclined on tab 118 is is maybe what you're talking about but I think if you want to look and talk about it we can. The the high product placement versions are when you look at any major website and it's got beautiful looking displays saying oh here's this product. That's not an advertisement even if that company paid for preferred placement because just like if you walked into Publix and you saw an end cap and they're paying extra for there or walking down the cereal aisle and you saw Cheerios right at your eye level that doesn't make it an ad. I'm not asking about the preferred product placement. Sure. I'm talking about the banner ads. The banner ads the only banner ads that that that were put at issue were done through Google and Google is completely and totally separate and as a result Via Varejo has zero control and without control there is no right to a trademark. Trademark rights demand control. Now there was testimony that they were they their control is that they can exclude. Well of course they can exclude certain things. Everyone Google made sure that everyone has the ability to make sure that there's not pornography ads on their website if they're a type of business that doesn't want that or to exclude a competitor for instance but an exclusion does not therefore create advertising rights where that whereby they exert control over such advertising rights. And then the third one was the the the marketplace sellers. The marketplace sellers may be what you're referring to your honor. No I wasn't. Let me ask you about your substantial effects argument. You're you're and really more so in the reply that in order to establish their ownership or prior use they have to show substantial effects in the United States. Yes. But isn't the substantial effects language that you're citing doesn't that come from the Steele versus Bolivar case that is talking about the jurisdictional test not the ownership test and aren't they different? No I don't think they're different. Yes it's a jurisdictional question but that jurisdictional question is subsumed in the whether or not there are rights to begin with. So are there rights in the U.S. that they're claiming and the only way to make that analysis and walking down that path of do you have a trademark do you have rights is that trademark in use and what is the substantial effect of that use. And in the case law that that is cited to even even within this circuit looks to whether or not there was a jurisdictional question and that's an argument made by Mr. Bowler's briefing is well this is just purely jurisdictional. No it's more than jurisdictional it goes to the heart of we have to determine whether you can exert the Lanham Act in the United States. Can a foreign entity get to claim rights under the Lanham Act and assert them and and the only way to do that is to determine if there was a substantial effect within the United States. Direct niche is a United States corporation right? Yes sir. Its conduct occurred in the United States it's a Minnesota company right? Correct. So I don't understand you know it seems to be pretty elementary if it's the Steele versus Bulova watch is about exercising jurisdiction over infringement occurring in a foreign country here the infringement occurs in the United States by a Minnesota company that's the jurisdictional hook right? No the question is whether or not a foreign entity the Eurasia can claim trademark rights in the U.S. against the U.S. entity so in this situation remember that this was a selling advertising from Brazil to U.S. companies right? We don't believe they were but that's the claim yes. That's a use in a foreign that's this is use in foreign commerce. If in fact there was a determination that the services being offered qualified as use for advertising services then yes certainly the the U.S. government and and the courts can regulate foreign commerce in that way under the Lanham Act that's not the question which then leads to the question by Judge Howard yes that's why the substantial effects test matters here in order to determine that merely the existence is not enough. So for instance in in the 11th Circuit's Hard Rock case payments to U.S. companies from the foreign entity still had no substantial effect. The 11th Circuit case makes that makes that look at and so so the it it has to be the larger look it has to be the deeper analysis. The substantial effects test was it presented to the district court? The district court relied upon it in their final order. It was cited to by the district court and I see I'm out of time so I'll reserve the remainder. Thank you. Morning John Bowler. Good morning. There I think two issues on on this appeal and that have been addressed by counsel in his argument and they center around use and in commerce and and there being both a jurisdictional use component to jurisdictional use and in that commerce which as Judge Wilson noted there's also use in commerce and what is enough to establish ownership rights and I'm going to address those in that order unless there's any other way that you'd like me to your honor but I don't think there's with respect to the first issue on jurisdictional use and commerce I don't think there's any serious debate and the appellant hasn't answered why it doesn't believe our advertising service services are classic commerce with a foreign nation that falls under article 1 section 445 of the Lanham Act sets out section 15 USC 1127 defines what is that constitutes jurisdictional use and commerce of a mark and it essentially sets out as McCarthy's and I think the court and International Bank Corp out of the Fourth Circuit noted a two-part test and the first inquiry is for jurisdictional use is that the mark must be used either in the sale or advertising of a service and secondly the service must be rendered in commerce this court in planetary motion which was cited by the Fourth Circuit in International Bank Corp is noted that the breadth of the use in commerce under the Lanham Act is coextensive which that commerce that Congress can regulate under the Commerce Clause and the preferred directory advertising listings the banner ads in the marketplace seller program are clearly are clearly fall into the sale of the use of a mark in the sale of advertising of a service and didn't start until after they registered the mark right that's correct your honor the district court found that the distinct so the distinctiveness of the mark Casa Spahia was established prior to the direct Nietzsche's first registration I think that these statute reads that the mark must be distinctive at the time of registration the district court also found that we have an inherently distinctive mark that is fanciful or arbitrary which is doesn't need to be shown to be distinctive it is distinctive at the time of the registration and there was a re-registration of the disputed domain name by direct Nietzsche not only after the WIPO decision in 2015 and after commencement of the litigation in late 2015 but during the litigation in 2016 when our marketplace seller program was used how is the preferred product placement really any different than when I go to Publix and they have Diet Coke right in front waiting for me as opposed to Diet Pepsi it's a good question and your honor I think it's the in Ray dr. pepper case which direct Nietzsche relies on actually discusses how department stores and retail stores are the classic type of situation that would involve an third party is under their brand names with a preferred directory listing mr. Othon Vila testified I think it was a doc at 129 maybe around page 40 41 he said there are three different negotiations three separate different negotiations with that product reseller first we price secondly we negotiate we look at whether we sell more product than we ordered and if we did that we negotiate a discount third separate in above that over and above that is a separate transaction where we have a limited number of spaces on the website that we offer to preferred clients who want their product placed preferentially kind of above and set apart from the ordinary product and in return for that placement we either get a payment from that retailer that supplier or we get a discount so it is a separate service it's a separate business it's a the most profitable business as mr. Othon Vila testified it's even more profitable than the than the sell the selling of the actual products the second part of the jurisdictional test is and ownership of a mark is the services must be rendered and that is in either interstate or foreign commerce and I think we've I know we've established very clearly that Apple is a foreign citizen it's transacting business with United States citizens and foreign commerce with the United States and that those ads and that those service are are in fact rendered and we had not only documentary or oral testimony from Othon Vila to the rendering but we actually had there were a number of screenshots for the preferred placement ads with various US companies and we had also screenshots showing the rendering of the banner advertising services and there was some we cited to the in Ray Caruso case and also which was a TTAB decision as well as a case I believe it was cypher trust out of the Fifth Circuit that said that the use of a mark that rendering a element of a sale and therefore showing the mark as we did on those website screen captures appertaining to there with the actual rendering or of our service is a use of the mark is and is an association with the mark now the second way the use in commerce is used and this touches back to where I think Judge Wilson cited crystal and planetary motion and that is address is just what does it take in this circuit to establish ownership rights of a mark and the court starts out with the back to just the textual language of section 45 that's 15 USC 1127 and the service mark is just any word or symbol or name used by a person well you should have argued that in your brief that's the 11th Circuit standard if we prepare an opinion in this case what should the opinion say with regard to the appropriate standard to establish use of the marking commerce we say should we say it's the Federal Circuit standard or should we say it's the 11th Circuit standard and we did advocate the 11th Circuit standard in the district court the Federal Circuit and so did direct niche and our pretrial but we're plainly bound by our case law are we not you are and to the extent there may be any difference between how the Federal Circuit comes at the question of use in at that question we are bound by controlling precedent in this circuit I take it you agree with that I do agree with that all right so are we bound by planetary and crystal here you are all right so why don't you apply them here your honor when you look at the test set out in crystal and planetary motion you this court looks there it needs to be adoption prior adoption and step one and step two there's a distinctiveness and the you this court applies a totality of the circumstances analysis of whether a party has established ownership sales is highly persuasive we have sales of advertising services here although sales is not necessary this court and planetary motion said that to warrant protection the use of a mark need not have been gained widespread public recognition I take it you would agree that use of the mark in association with via Varejo's retail business would not satisfy the use in commerce requirement so you have to look elsewhere to find it right your honor if I could just ask you to rephrase this the first part of your question I you do not dispute that the use of the mark in association with Varejo's retail business would not satisfy the use in commerce requirement would it correct your honor okay so you have to look elsewhere we'd have to look elsewhere okay so let's look elsewhere here you're left to argue that it obtained a common law service mark in connection with the advertising services which it claims to have provided to certain US companies right that's what you have to look to correct all right look to him and tell me how that meets your standard under planetary etc so we supplied both oral testimony and documentary evidence mr. Othon Villa testified that we use the mark in connection with their advertising services and when when pressed on whether customers of advertising services transact with Casas Bahia as Casas Bahia his testimony was repeatedly yes I asked him that with respect to black and Decker I asked him that with respect to Microsoft that's on dock at 139 at pages 114 line 25 to page 115 line 10 in addition to that there was trial testimony with respect to preferred placements that US suppliers negotiate directly with Casas Bahia there was also testimony the same with respect to banner advertising as judge Howard noticed and I think my client used a General Motors example for banner advertising and that was also the case with the marketplace ads the those ads were rendered on the Casas Bahia website and in addition to his testimony there was evidence that the services were actually rendered that is that the cert that in that is those that is evidence that the service mark is being used in association with the sales of the case which the district court cited in its order for the proposition that evidence like ours showing use of a mark in the rendering of a service is evidence that the mark is used to identify the service but he testified it sort of in about it sort of more hypothetically he was saying he was explaining how Casas Bahia might negotiate with a particular entity to put the ads directly the banner ads directly on their website so he says it could be that General Motors approaches us that way where in the record is there specific evidence of a particular entity contracting directly or negotiating directly with Casas Bahia for the placement of a banner ad your honor I recall mr. Avila's testimony that we deal directly with companies in addition to looking for the record site that we deal with Yahoo Adobe and and other and and others in addition to US companies I see that I'm about running out of time and the one issue I've not addressed that was raised in the opening statements was about the court declining to strike the testimony in addition to the record sites that the plaintiff relied on mr. Villa as judge Howard notice said he had independent knowledge outside that document and when we came back to that similar line of inquiry later in the case at docket 139 at page 116 to page 117 he testified without referencing to a document that there were and in 2016 there were more than four minute four million visitors from the United States I see that I'm out of time and unless the court has questions thanks very much mr. Spielman you've reserved two quickly that I think McCarthy is really instructive here and me ask just a simple fact question is there not abundant evidence here showing that Casa Bahia mark is displayed prominently during the rendering of the advertising services no I think there's there's almost none and the reason is because it premises the concept that on the top of every page of the Casa Bahia website isn't the Casa Bahia mark displayed in close proximity to the various advertisements and promotional images that via Varejo featured on its site so again assuming that in fact yes the answer would be yes to that question yes the Casa Bahia words are displayed at the top like every website would be the difference is and in this situation that's why I think McCarthy really is instructive the words from McCarthy are helpful those services that are commonly incidental to the production of or sale of goods do not constitute services sufficient to justify the registration of a mark they're expected or routine from the dr. pepper case it was expected a routine that they're going to sell their goods this is not and has never been advertising it is merely I take it you do not disagree that the question of whether a mark has been used to identify a particular type of service is a question of fact that we review only for clear error yes except in this situation there was a failure to apply the correct standard and therefore it was a de novo rule era of law the the judge in the era of law is what failure to apply the substantial effects test I'll close with one one concept the Lanham Act is a two-way street in one breath via Varejo would like this all rights and therefore we we get to assert them in the US however the reverse would also need to be true and in a similar situation where via Varejo was seeking to enforce its rights against a US entity have a difficult time getting hailed into court thank you much thank you both for your efforts